UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

HASBRO, INC., Plaintiff,

v. CA 03-482 T

DAVID CHANG, Defendant.

**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

Before the court is Plaintiff's Motion to Adjudge Defendant David Chang in Contempt (Document ("Doc.") #37) ("Motion" or "Motion to Adjudge in Contempt"). By the Motion, Plaintiff Hasbro, Inc. ("Plaintiff" or "Hasbro"), seeks to have Defendant David Chang ("Defendant" or "Chang") adjudged in contempt for failing to comply with the court's May 5, 2005, Order compelling the production of documents. Motion at 1. The Motion has been referred to me for preliminary review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

The Order of referral specifically directs that this Magistrate Judge "recommend whether the Defendant should be adjudged in contempt, or in the alternative, that the Defendant's counterclaims should be dismissed and/or default should be entered against the Defendant with regard to Plaintiff's claims." Order (Doc. #43) of 9/19/05 ("Order of 9/15/05"). It further directs that I recommend "whether or not the Defendant should be ordered to pay the Plaintiff's costs and attorneys' fees incurred in the filing and prosecution of this motion." Id.

For the reasons stated herein, I find that Chang failed to comply with the court's May 5, 2005, Order and that as a sanction for this noncompliance his counterclaims should be dismissed and default judgment should be entered against him with

48

regard to Hasbro's claims. If this recommendation is accepted, I do not recommend that Chang be ordered to pay Hasbro's costs and attorneys' fees in connection with the filing of the Motion as I find that dismissal of his counterclaims and entry of default judgment is a sufficient sanction to punish the violation and to deter others from similar violations. However, if the recommendation for dismissal of Chang's counterclaims and entry of default judgment is not accepted, then I recommend that Chang be ordered to pay such costs and attorneys' fees.

**Facts and Travel**

This is an action for trademark and copyright infringement, trademark dilution, and unfair competition brought by Hasbro against Chang. Complaint for Injunctive Relief for Violation of Sections 32 and 43 of the Lanham Act and Section 501 of the Copyright Act (Doc. #1) ("Complaint") ¶¶ 1, 37-38. Hasbro's claims are based on Chang's manufacture and sale of the board game "GHETTOPOLY," Complaint ¶ 16, and the effect of those activities on Hasbro's trademarks and copyrights for its board game "MONOPOLY®," id. ¶¶ 24-25, 29-30, 35-36. Chang has counterclaimed, seeking an order pursuant to 15 U.S.C. § 1119 which will "direct[] the Commissioner of Patents and Trademarks to cancel all the trademark registrations owned by the plaintiff for the term 'MONOPOLY' for board games on the ground of genericness." Answer with Affirmative Defenses and Counterclaim (Doc. #31) ("Answer") at 7-8.

On December 23, 2004, Hasbro served Chang with Plaintiff's First Set of Interrogatories and Plaintiff's First Set of Requests for Production of Documents and Things ("Discovery Requests"). Declaration of Sneha Desai in Support of Plaintiff's Motion to Adjudge Defendant David Chang in Contempt ("Desai Decl.") ¶ 2. The responses were due on or before January 25, 2005. Id. Chang failed to provide any responses prior to that

date. Desai Decl. ¶ 3. On January 28, 2005, Attorney Sneha Desai ("Attorney Desai"), one of the attorneys representing Hasbro in this action, telephoned Chang to inquire when the responses would be forthcoming. Id. Attorney Desai agreed to extend the date by which responses to the Discovery Requests would be due to February 18, 2005. Id. Despite this extension, Chang failed to provide any responses on or before February 18, 2005, and he did not request any further extensions. Id. ¶ 4. Thereafter, Hasbro allowed Chang additional time to respond to the Discovery Requests, but no responses materialized. Id.

On April 13, 2005, Hasbro filed a motion to compel Chang to respond to its Discovery Requests on or before May 13, 2005. Docket in Hasbro, Inc. v. Chang, CA 03-482 T (D.R.I.) ("Docket"); Plaintiff's Motion to Compel (Doc. #34) ("Motion to Compel") at 1. Chang did not file an objection to the Motion, see Docket, and on May 5, 2005, the court granted the Motion to Compel in part.[1] See Order Granting in Part Motion to Compel (Doc. #36) (the "May 5, 2005, Order"). Pertinent to the court's determination of the instant Motion, the May 5, 2005, Order stated in relevant part:

> (1) Defendant is ordered to respond to Plaintiff's Discovery Requests not later than May 17, 2005.
>
> (2) **Defendant is hereby warned that if he does not comply with this Order, a default and, thereafter, a default judgment, may be entered against him.** See Fed. R. Civ. P. 37.

May 5, 2005, Order at 1-2 (footnote omitted)(bold added). In a

[1] Although the title of the order granting Plaintiff's Motion to Compel (Doc. #34) ("Motion to Compel") stated that the Motion to Compel was granted "in Part," this was solely because Hasbro sought to have Chang respond by May 13, 2005, and the court gave him until May 17, 2005, to respond. In all other respects, Plaintiff's Motion to Compel was fully granted. See May 5, 2005, Order; Plaintiff's Motion to Compel.

footnote which immediately followed the citation to Fed. R. Civ. P. 37, the court reproduced relevant portions of the Rule which authorizes dismissal of an action or a judgment by default against the disobedient party. May 5, 2005, Order at 2 n.2.

Chang produced some documents via e-mail to Attorney Desai on May 12, 2005. Desai Decl. ¶ 6. However, it was apparent to Attorney Desai by the nature of the documents produced that Chang had failed to provide all responsive documents to Hasbro's discovery requests. Id. In subsequent communications with Chang, Attorney Desai:

> spelled out in clear, simple terms the types of documents Hasbro was looking for, and even sent him a detailed letter on May 16, 2005, delineating the various documents that would be responsive to each request. That letter specifically listed as responsive "All documents regarding the sale of GHETTOPOLY, including shipping documents, purchase orders, and invoices." In addition, that letter made it clear that e-mails were within the universe of documents that Hasbro had requested.

Desai Decl. ¶ 6. Around this same time, Chang agreed to produce his corporate tax returns to Hasbro. Id.

Although Chang produced a few documents subsequent to Attorney Desai's May 16, 2005, letter, he stated on June 10, 2005, that: "All the document you have requested has been given to you, any document that you are asking for but did not receive is because I do not have them in my procession or are lost [*sic*]." Id. ¶ 7 (alteration in original). However, when Chang was deposed on August 5, 2005, it became apparent to Attorney Desai that Chang possessed many more responsive documents, including weekly invoices from his fulfillment houses and e-mails from customers and the media, that he had not searched for or produced to Hasbro and that he had not told Hasbro existed. Id. ¶ 8; see also August 5, 2005, Deposition of David Chang ("Dep.") at 41-100.

When asked why he did not produce these documents to Hasbro earlier, Chang simply stated that he thought it was sufficient to supply Hasbro with his total sales figures, that Hasbro could subpoena his fulfillment houses and get the information from them, and that it was a lot to print out. Desai Decl. ¶ 9; see Dep. at 60-67.[2] Chang admitted that he was well aware that

[2] The following excerpt from Chang's August 5, 2005, deposition demonstrates that his June 10, 2005, statement to Attorney Desai that he did not have any responsive documents in his possession lacked a good faith basis. The excerpt is also illustrative of Chang's cavalier attitude towards his discovery obligations.

Q I didn't ask about a single document, Mr. Chang. Do you have any documents responsive to that request including documents that you may have received from the fulfillment house including tax returns, including financial statements? Do you have documents like that that show --

A Yes.

Q --sales?

A Yes.

Q Did you produce those to me?

A No.

Q No? Why not?

A Why not? I guess because it would just have been a lot to print out.

Q That's your reason for not producing the documents?

A Well, I can certainly get those to you now -- now -- well, I don't even know if I could get it. Yeah, I could --

Q Well, Mr. Chang, I'm making a request on the record. Despite the fact that you were obligated to produce these under the document request and I sent you a follow-up letter explaining what it is that you should produce, I didn't get any documents responsive to No. 11 except for a statement by you about what your total sales were.

Hasbro wanted his corporate tax returns, but he decided not to produce them because he thought what he gave to Hasbro, which was simply an answer to an interrogatory about how many total games he sold, was sufficient. Desai Decl. ¶ 9; see Dep. at 62-73. Chang never objected to the Discovery Requests as being burdensome, overly broad, or objectionable for some other reason. Desai Decl. ¶ 10. Rather, as already noted, he specifically stated that he had turned over everything he had. Id.; see Dep. at 56-59, 71-72. At one point during the deposition Chang attempted to justify his failure to produce the requested documents on the ground that he did not "have the capability of printing out 50,000 separate sheets and click[ing] on each one ...," Dep. at 72, but this excuse clearly was unavailing as to his corporate tax records which were two page documents and which he had previously agreed to produce, id.; see also Desai Decl. ¶ 6.[3]

---

A Okay.

Q I'm asking you to produce documents -- whether it's a single document or it's 100 documents -- sufficient to show your sales by unit or revenues. Do you understand that?

A Okay.

Q Will you produce those documents?

A Yeah.

Deposition of David Chang ("Dep.") at 67-68.

[3] After Chang asserted that he could not print out "50,000 separate sheets and click on each one," Dep. 72, the following exchange occurred:

Q Mr. Chang, how voluminous are your corporate tax returns?

A Are you[] referring just to that?

Q For this question I am.

---

A Two pages.

Q Okay. So why weren't those produced to me?

A I tried looking for them, but I thought -- as far as the total sales go, when I gave you a figure, I thought that would have been sufficient, but now I know that, you know, you want that. I will ask my attorney to fax it so I know exactly where it is so I can refax it over to you.

Q Well, Mr. Chang, you also knew that I wanted that based on Exhibit 6, is that right, a letter that you got. The first highlighted portion; do you see that?

A Yes.

Q Did you produce them to me after you got this letter?

A No.

Q Was there any doubt in your mind after you got that letter that I wanted your corporate tax returns?

A No.

Q So why didn't you produce them to me after you got this letter? You just decided not to, right?

A No, it's not that I decided not to; it's that whatever document that's given to you -- I thought that was sufficiently [sic] answer my -- my total sales, my revenue and whatnot. Being that it's just like, you know, me without a lawyer, I'm sure you're going to -- there's certain things that you're asking for me that, you know, if I had an attorney at this time that they would have object [sic] to. That to me was something like, you know -- it's like, you know, right now I'm counseling; it's not like -- I'm sure there's many documents that you feel that you, you know -- that just is your financial records. It's not like I'm going to ask for Hasbro financial record and you're going to freely hand over. And I thought maybe it's just one of those things that --

Q Move to strike as nonresponsive, please. Mr. Chang you understand now that we would like to

Chang had earlier represented to Attorney Desai that "customercare@ghettopoly.com" was the only e-mail address to which customers and others sent him business e-mails. Desai Decl. ¶ 11. However, at the deposition she learned that Chang had three other e-mail addresses and that he had never fully searched those e-mails in response to Hasbro's document requests. Id.; see Dep. at 75-87. Chang's explanation for not doing so was again that it was too burdensome, but he never objected on these grounds and had not informed Hasbro that these e-mails may contain responsive information prior to his deposition. Desai Decl. ¶ 11; see also Dep. at 77-82, 84-85, 86-87.

At the deposition Chang agreed on the record to produce additional documents, such as weekly invoices and the corporate tax returns, and to go back and search through his other e-mail accounts for responsive documents. Desai Decl. ¶ 12; see Dep. at 64-68, 73-74, 86-87. Attorney Desai sent Chang a letter the following week, confirming that Chang would produce these documents and reminding him that discovery closed on August 19, 2005. Desai Decl. ¶ 12.

On August 15, 2005, Chang sent Attorney Desai an e-mail stating that he was not going to produce the documents by August 19 because he was "busy." Id. At the time, Chang's only employment was with Ghettopoly.com, Inc. Id.; see also Dep. at 17. Attorney Desai replied the same day, advising Chang that this was not acceptable, that August 19th was a court-ordered

---

produce your corporate tax returns?

A Yes.

Q And you're going to produce them to us?

A Yes.

Dep. at 72-74.

deadline, that she was not in a position to extend it, that he already had had over eight months to produce all of his documents, and that Hasbro would seek further relief from the court if he did not the produce documents by August 19. Desai Decl. ¶ 13; id., Exhibit ("Ex.") A at 1. Chang responded, also the same day, in an e-mail stating:

> not acceptable????????????? go get your relief then.. You don't understand busy?? Were you not at the deposition? The additional info I am submitting to you such as fulfillment invoices and going through my private email accounts were some of the thing [sic] not clearly stated in the document request, at least to me. I have a prior engagement this week and will be busy..

Desai Decl., Exhibit ("Ex.") A at 1.

Hasbro took the deposition of Adam Geyer, the artist who designed the Ghettopoly logo and gameboard, on August 9, 2005. Desai Decl. ¶ 14. Geyer testified that he gave Chang his handwritten notes and sketches regarding the game. Id. Hasbro's document requests to Chang specifically called for any documents relating to the design of the game. Id.; see also Declaration of Sneha Desai in Support of Plaintiff's Motion to Compel (Doc. #35), Ex. B (Plaintiff's First Set of Requests to Defendant David Chang for Production of Documents and Things)("Plaintiff's Requests for Production") at 6.[4] This was explained to Chang in

[4] Request No. 17 of Plaintiff's First Set of Requests to Defendant David Chang for Production of Documents and Things states:

> 17. All documents constituting or concerning the design, development and/or manufacture of the GHETTOPOLY game, including, but not limited to all communications with actual or potential manufacturers or distributors.

Declaration of Sneha Desai in Support of Plaintiff's Motion to Compel (Doc. #35), Ex. B (Plaintiff's First Set of Requests to Defendant David Chang for Production of Documents and Things) ("Plaintiff's Requests for Production") at 6.

Hasbro's May 16, 2005, letter to him. Desai Decl. ¶ 14. Despite testifying that he never threw anything out, Chang failed to produce these documents as of August 17, 2005, the date of Attorney's Desai's Declaration (Doc. #38). See id.; Dep. at 55-56, see also Dep. at 122-23.

On August 29, 2005, Hasbro received additional documents from Chang. Supplemental Declaration of Sneha Desai in Support of Plaintiff's Motion to Adjudge Defendant David Chang in Contempt (Doc. #41)("Desai Supp. Decl.") ¶ 3. The documents, which came in a stack about two inches high, consisted mostly of additional e-mails/letters from consumers and the media, some scattered invoices from some of Chang's fulfillment houses and manufacturers, and sketches of the game. Id. These documents did not contain corporate tax returns or other financial information sufficient to show how much money Chang had made to date from the sale of Ghettopoly. Id. Moreover, the invoices which Chang produced from some of his fulfillment houses were incomplete. Id. ¶ 4. Chang testified that he received weekly documents from his fulfillment houses showing how many games he sold. Id.; Dep. at 97-98; see also Dep. at 64. However, entire weeks and months were missing from the documents produced by Chang on August 29th. Desai Supp. Decl. ¶ 4. He produced virtually no documents to show how many games he sold prior to March 2004, id., despite testifying that after this lawsuit was filed in October of 2003 he took care to make sure that documents would not be lost or destroyed, Dep. at 45-46; see also id. at 55-57.[5] Chang failed to offer any explanation why these

[5] The absence of documentation to show how many games Chang sold prior to March of 2004 understandably concerns Hasbro because he testified that after the game was featured in Maxim magazine in May of 2003 his sales were "pretty good," Dep. at 214 ("I guess the first month it was -- you know, it was pretty good, probably 30 to 40 games per day.); see also id. at 212, and that they increased dramatically in October of 2003 after sales of the game by Urban Outfitters was

documents were not produced or how and when they were destroyed. Desai Suppl. Decl. ¶ 4.

Chang also did not produce any documents from a third fulfillment house. Id. Although he produced sketches of his game, he did not produce (or explain the nonproduction of) notes that Adam Geyer, the artist whom Chang hired to design the game, testified he took while he was doing the artwork and may have given to Chang.[6] Id. ¶ 5.

Hasbro filed the instant Motion to Adjudge in Contempt on August 18, 2005. Chang did not file an objection to the Motion. See Docket. As previously noted, the Motion was referred to this Magistrate Judge on September 19, 2005. Order of 9/19/05. The court conducted a hearing on the Motion on October 7, 2005. Although Chang appeared, he did not provide any legitimate explanation as to why he had not complied with his discovery obligations. Second Supplemental Declaration of Sneha Desai in Support of Plaintiff's Motion to Adjudge Defendant David Chang in Contempt (Doc. #47) ("Desai Second Supp. Decl.") ¶ 4; see also Tape of 10/7/05 hearing. At the conclusion of the hearing, the court took the matter under advisement. As of October 27, 2005, Chang had still not provided any of the outstanding documents which Hasbro had requested or provided an explanation for their non-production.[7] Desai Second Supp. Decl. ¶ 4.

On October 28, 2005, Hasbro filed a Second Supplemental

---

publicized by the news media, id. at 214-15 (testifying that the range of sales fluctuated between 70 to a few hundred per day and reached a 1,000 per day for a couple days).

[6] At the October 7, 2005, hearing Chang stated that he did not have these notes. See Tape of 10/7/05 hearing.

[7] There is no evidence that this circumstance has changed since October 27, 2005, the date Attorney Desai executed the Second Supplemental Declaration of Sneha Desai in Support of Plaintiff's Motion to Adjudge David Chang in Contempt (Doc. #47).

Memorandum of Law in Support of Plaintiff's Motion to Adjudge Defendant David Chang in Contempt (Doc. #46) ("Plaintiff's Second Supp. Mem."). Hasbro explained that the purpose of this filing was "to alert the Court that Chang has completely failed to file a Pretrial Memorandum, which was due on October 18, 2005, and has thus waived ***all*** of his claims and defenses in this case."[8] Plaintiff's Second Supp. Mem. at 1; see also Pretrial Order at 8; id. at 9.

**Law**

Fed. R. Civ. P. 37(b)(2) states in relevant part: "If a party ... fails to obey an order to provide ... discovery ... the court in which the action is pending may make such orders in regard to the failure as are just ...." Fed. R. Civ. P. 37(b)(2). Among the sanctions authorized is an order "rendering a judgment by default against the disobedient party[.]" Fed. R. Civ. P. 37(b)(2)(C); accord United States v. Palmer, 956 F.2d 3, 7 (1st Cir. 1992) ("Fed. R. Civ. P. 37(b)(2)(C) permits, as a sanction for disobeying a discovery order, 'rendering a judgment by default against the disobedient party.'")(quoting the Rule).

---

[8] The Pretrial Order (Doc. #2) provides, in relevant parts, that:

> Failure to submit any pretrial filing on or before the due date may result in the imposition of sanctions and/or the exclusion of any evidence that should have been disclosed in a timely submission.

Pretrial Order at 8.

> Any claims, defenses and/or arguments not included in the Pretrial Memorandum shall be deemed waived whether or not they are contained in the pleadings.

Id. at 9.

However, "[a] default judgment is ... a drastic sanction that should be employed only in an extreme situation." Luis C. Forteza e Hijos, Inc. v. Mills, 534 F.2d 415, 419 (1st Cir. 1976); see also United States v. Certain Real Prop. Located at Route 1, Bryant, Alabama, 126 F.3d 1314, 1317 (11th Cir. 1997) ("The decision to ... enter default judgment 'ought to be a last resort--ordered only if noncompliance with discovery orders is due to willful or bad faith disregard for those orders.'") (quoting Cox v. Am. Cast Iron Pipe Co., 784 F.2d 1546, 1556 (11th Cir. 1986)); Marx v. Kelly, Hart & Hallman, P.C., 929 F.2d 8, 10 (1st Cir. 1991)("[D]ismissal with prejudice 'is a harsh sanction' which runs counter to our 'strong policy favoring the disposition of cases on the merits.'")(quoting Figueroa Ruiz v. Alegria, 896 F.2d 645, 647 (1st Cir. 1990)); cf. Coyante v. Puerto Rico Ports Auth., 105 F.3d 17, 23 (1st Cir. 1997)("discovery abuse, while sanctionable, does not require as a matter of law imposition of most severe sanctions available")(citing Anderson v. Beatrice Foods Co., 900 F.2d 388, 396 (1st Cir. 1990)); Affanato v. Merrill Bros., 547 F.2d 138, 141 (1st Cir. 1977)("isolated oversights should not be penalized by a default judgment").

Nevertheless, "[t]he law is well established in this circuit that where a noncompliant litigant has manifested a disregard for orders of the court and been suitably forewarned of the consequences of continued intransigence, a trial judge need not first exhaust milder sanctions before resorting to dismissal." Angulo-Alvarez v. Aponte de la Torre, 170 F.3d 246, 252 (1st Cir. 1999); see also Serra-Lugo v. Consortium-Las Marias, 271 F.3d 5, 6 (1st Cir. 2001)(affirming dismissal of complaint "after repeated violations of its orders and after having warned plaintiff of consequences of non-compliance); Marx v. Kelly, Hart & Hallman, P.C., 929 F.2d 8, 10-11 (1st Cir. 1991)(finding "plaintiff's conduct evidenced a deliberate pattern of delay and

disregard for court procedures that was sufficiently egregious to incur the sanction of dismissal"). "[A] party's disregard of a court order is a paradigmatic example of extreme misconduct." Torres-Vargas v. Pereira, 431 F.3d 389, 393 (1st Cir. 2005); accord Young v. Gordon, 330 F.3d 76, 81 (1st Cir. 2003) ("[D]isobedience of court orders is inimical to the orderly administration of justice and, in and of itself, can constitute extreme misconduct.")(citing Tower Ventures, Inc. v. City of Westfield, 296 F.3d 43, 46 (1st Cir. 2002); Cosme Nieves v. Deshler, 826 F.2d 1, 2 (1st Cir. 1987)). Thus, "a party flouts a court order at his peril." Torres-Vargas v. Pereira, 431 F.3d at 393; accord Young v. Gordon, 330 F.3d at 82 ("it is axiomatic that 'a litigant who ignores a case-management deadline does so at his peril.'")(quoting Rosario-Diaz v. Gonzalez, 140 F.3d 312, 315 (1st Cir. 1998)).

When noncompliance with an order occurs, "the ordering court should consider the totality of events and then choose from the broad universe of available sanctions in an effort to fit the punishment to the severity and circumstances of the violation." Young v. Gordon, 330 F.3d at 81 (citing Tower Ventures, Inc. v. City of Westfield, 296 F.3d at 46). The appropriateness of an available sanction depends upon the facts of the particular case. Torres-Vargas v. Pereira, 431 F.3d at 392.

**Discussion**

The Motion seeks to have Chang sanctioned for failing to comply with the court's May 5, 2005, Order. Motion at 1. That order required him to "respond to Plaintiff's Discovery Requests not later than May 17, 2005." May 5, 2005, Order at 1. There is no doubt that Chang failed to comply with this deadline. As already detailed in the Facts and Travel portion of this Report and Recommendation, while Chang produced some documents via e-mail to Attorney Desai on May 12, 2005, see Desai Decl. ¶ 6, he

failed to produce a large number of other responsive documents, including weekly invoices from his fulfillment houses and e-mails from customers and the media, id.; see also Plaintiff's Requests for Production at 2 (stating that the term "document(s)" includes e-mail and invoices); id. at 5 (requesting documents evidencing communications from any actual or potential customer); id. at 6 (requesting "[d]ocuments sufficient to show the sales by month or quarter of each product using the GHETTOPOLY trademark"); id. (requesting "[a]ll documents constituting or concerning the design, development and/or manufacture of the GHETTOPOLY game"); id. (requesting "[a]ll documents constituting or concerning communications with any fulfillment house"). Accordingly, I find that Chang violated the May 5, 2005, Order.

Having determined that Chang violated the order, the court now considers the totality of events to insure that the punishment fits the severity and circumstances of the violation. See Young v. Gordon, 330 F.3d at 81; see also Torres-Vargas v. Pereira, 431 F.3d 389, 392 (1st Cir. 2005)(noting that a court reviewing the imposition of sanctions "must consider the chronology of the case and the totality of the attendant circumstances" and "must construct a balance of the relevant factors, including (but not limited to) the trial court's need to manage its docket, the potential prejudice to the parties, and the policy of the law favoring disposition on the merits"). The court finds that the six factors which it utilized in Estates of Ungar and Ungar ex rel. Strachman v. Palestinian Authority, 325 F.Supp.2d 15 (D.R.I. 2004), for determining whether to recommend default judgment pursuant to Fed. R. Civ. P. 37(b)(2) because of defendants' failure to comply with discovery are helpful here in considering the totality of events. The six factors are:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3)

> a history of dilatoriness; (4) whether the conduct of the party o[r] the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

Estates of Ungar and Ungar, 325 F.Supp.2d at 61 (citing Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912, 919 (3rd Cir. 1992) (citing Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863, 868 (3rd Cir. 1984)))(alteration in original). Accordingly, the court applies them here.

The court first considers Chang's personal responsibility for the violation. Chang was initially represented by counsel in this action, but he has been proceeding pro se since November 9, 2004, when the court granted the motions of his attorneys to withdraw.[9] See Docket; see also Orders (Docs. #24, #25)(granting motions to withdraw). The Discovery Requests were served on him on December 23, 2004, Desai Decl. ¶ 2, after his counsel had withdrawn, see Docket. Thus, Chang is personally responsible for the violation of the May 5, 2005, Order.

His pro se status does not provide a basis on which to excuse the noncompliance. See Instituto de Educacion Universal Corp. v. United States Dep't of Education, 209 F.3d 18, 24 n.4 (1st Cir. 2000)(stating that pro se parties are not excused from compliance with procedural rules); Eagle Eye Fishing Corp. v. U.S. Dep't of Commerce, 20 F.3d 503, 506 (1st Cir. 1994)("the right of self-representation is not a license not to comply with relevant rules of procedural and substantive law")(internal quotation marks omitted). Even pro se litigants must comply with case management orders. See Rosario-Diaz v. Gonzalez, 140 F.3d 312, 315 (1st Cir. 1998).

---

[9] Although proceeding pro se, Chang testified at his deposition that he has been consulting with and paid an attorney since the withdrawal of his prior counsel. Dep. at 11-13.

Next the court considers the prejudice to Hasbro resulting from the violation. At a minimum, Chang's failure to produce the documents prior to his deposition denied Hasbro's attorneys the ability to make use of those materials at the deposition. However, the prejudice extends well beyond this because key documents still have not been produced by Chang. See Desai Second Supp. Decl. ¶ 4 (stating that even after the October 7, 2005, hearing "Chang did not provide any of the outstanding documents to which Hasbro is entitled"). Still missing are documents such as "corporate tax returns or other financial information sufficient to show how much money Chang has made to date from the sale of Ghettopoly." Desai Supp. Decl. ¶ 3. He has "produced virtually no documents to show how many games he sold prior to March 2004." Id. ¶ 4. These omissions make it difficult, if not impossible, for Hasbro to determine and verify Chang's profits from Ghettopoly. Since such profits would be recoverable by Hasbro if it is successful in this action, see 17 U.S.C. § 504; 15 U.S.C. § 1117(a), the failure of Chang to provide them prejudices Hasbro to a significant degree. In addition, Chang's failure to produce documents concerning the design and development of Ghettopoly is especially prejudicial to Hasbro's ability to prove its trademark and copyright infringement claims.

One of Chang's main defenses is that he intended to create a parody of the MONOPOLY® game when he created Ghettopoly. Answer (Doc. #31) at 6 ("GHETTOPOLY™ is a strong parody on MONOPOLY® board game"); see also Dep. at 108-12, 119-20, 151-53, 247-49, 255-60. Geyer, the artist who designed the Ghettopoly logo and gameboard, testified that he gave his handwritten notes and sketches to Chang, but Chang has not produced these documents

which he received from Geyer.[10] Desai Decl. ¶ 14. This failure hinders Hasbro's ability both to prevail on its own claims and to defeat Chang's counterclaim.

Discovery in this matter closed on August 19, 2005. Pretrial Order (Doc. #29) at 1. Chang's failure to comply with Hasbro's Discovery Requests has significantly prejudiced its ability to prepare for and succeed at trial.

Chang's record of dilatoriness is virtually unbroken. He failed to respond to the Discovery Requests by their due date of January 25, 2005. Desai Decl. ¶¶ 2-3. Hasbro agreed to extend the response date to February 18, 2005, but Chang missed that date also, and he did not request any further extensions. Id. ¶¶ 3-4. Although thereafter Hasbro allowed Chang additional time to respond, no responses were forthcoming. Id. ¶ 4. After Hasbro filed its motion to compel on April 13, 2005, Chang did not file an objection, see Docket, but still failed to respond to the Discovery Requests, see Desai Decl. ¶¶ 4-5. Chang was ordered by the court to respond not later than May 17, 2005, see May 5, 2005, Order at 1, but, as the court has already determined, he failed in substantial degree to meet this deadline, see Discussion supra at 15 (finding that Chang violated the May 5, 2005, Order). Prior to his deposition Chang agreed to produce his corporate tax returns, Desai Decl. ¶ 6, and agreed again, this time on the record at his deposition, to produce these documents, see Dep. 73-74. Despite these commitments, Chang has failed to do so. Desai Supp. Decl. ¶ 3. The approximately two inch stack of documents which Chang produced to Hasbro on August 29, 2005, see Desai Supp. Decl. ¶ 3, arrived after the close of discovery on August 19, 2005, see Pretrial Order at 1. In a continuation of the pattern of delay and

---

[10] See n.6.

noncompliance, Chang has failed to file the pretrial memorandum which was due on October 18, 2005. See Desai Second Supp. Decl. ¶ 5; cf. Marx v. Kelly, Hart & Hallman, P.C., 929 F.2d 8, 10-11 (1st Cir. 1991)(concluding that "the plaintiff's conduct evidenced a deliberate pattern of delay and disregard for court procedures that was sufficiently egregious to incur the sanction of dismissal").

As to whether Chang's conduct was willful or in bad faith, all indications are that it was willful. Chang has a bachelor of science degree in economics and psychology. See Dep. at 22. The court observed and interacted with him at the Rule 16 Conference on December 6, 2004, and also at the hearing and settlement conference conducted on October 7, 2005. The court has also read the transcript of Chang's deposition. Based on what the court has observed and read, he appears to be of above average intelligence. He testified at his deposition that he has consulted with and paid an attorney, see Dep. at 11-13, and that she is available to him to provide advice, id. at 13 ("if I need her services, I would just, you know, ask her a question and she would just answer it"). Chang's business acumen is such that he was able start a business which enabled him to pay himself a salary of $120,000.00 in 2004, see id. at 102, pay his sister $100,000.00 for six months' work, see id. at 226, 262-63, and pay each of his parents $60,000.00 for six months' work, id. at 226, 262-63.

As previously noted, the court has read the entire transcript of Chang's deposition. Pages 41-100 of that document in particular demonstrate that Chang's failure to produce the documents required by the May 5, 2005, Order was willful. Chang's answers, at best, reflect a lackadaisical approach to his discovery obligations. See, e.g., Dep. at 47 ("the letters to the copyright office, you know, I didn't look for that

specifically"); id. at 56 ("I don't go out of my way to look for documents."); id. at 62 ("I find it to be unnecessary because that's a lot of work on my part"); id. at 64 ("I didn't know you asked for my invoices."); id. at 86 ("I guess I would be willing to go in and print out whatever documents as you guys originally requested."). At worst, they are outright falsehoods. See, e.g., Dep. at 57 ("whatever documents that you guys are requesting that I did not submit to you was probably not in my possession or lost"); id. at 58 ("whatever documents that you're requesting that you don't have, it's -- either it never existed to begin with, just like you're asking the documents for some consumer confusions, I don't have any of that to submit to you"). In either case, such conduct has been found to warrant sanctions equivalent to the entry of default against the offending party. See Serra-Lugo v. Consortium-Las Marias, 271 F.3d 5, 6 (1st Cir. 2001)(affirming dismissal notwithstanding plaintiff's belated compliance with court order in "a somewhat relaxed manner"); see also KPS & Assocs., Inc. v. Designs by FMC, Inc., 318 F.3d 1, 15 (1st Cir. 2003)(finding no abuse of discretion in district court's refusal to set aside default where defendant's counsel "fabricated his explanation regarding the filing of an answer"); United States v. Palmer, 956 F.2d 3, 6-7 (1st Cir. 1992)("[I]n the ordinary case, where sanctions for noncompliance with discovery orders are imposed on a plaintiff, the standard sanction is dismissal of the complaint, with or without prejudice, while a judgment of default typically is used for a noncomplying defendant.").

Chang's August 15, 2005, e-mails to Attorney Desai constitute additional evidence demonstrating that his failure to comply was willful. In those e-mails Chang advised her that he was not going to produce the additional documents (which he had previously agreed to produce) by August 19, 2005 (the date

discovery closed), because he was "busy." Desai Decl. ¶ 12. Indeed, his second e-mail to Attorney Desai conveys an arrogant and defiant tone.[11] Chang's claim of having "a prior engagement this week," Desai Decl., Ex. A, does not provide a basis for finding that his conduct was other than willful,[12] see Young v. Gordon, 330 F.3d 76, 82 (1st Cir. 2003)(explaining that the fact that a litigant may have had other priorities does not necessarily excuse noncompliance with a court order). To the contrary, Chang's own words demonstrate that his conduct was willful.

At the October 7, 2005, hearing, Chang claimed that he did not know the August 19, 2005, date was a court-ordered deadline. Tape of 10/7/05 Hearing. I find that this statement cannot have been made in good faith. Chang attended the Rule 16 conference on December 6, 2004, at which the discovery closure date of August 19, 2005, was established. In fact, this Magistrate Judge announced the date and entered it in the Pretrial Order (Doc. #29) in Chang's presence, and a copy of the Pretrial Order was provided to Chang, see Docket Entry for Doc. #29 made on 12/6/04.[13] Moreover, Attorney Desai advised Chang prior to his

---

[11] This second e-mail is reproduced at page 9.

[12] At the October 7, 2005, hearing Chang stated that he was "busy" because he had relatives from out of town who were visiting him. See Tape of 10/7/05 hearing. The court does not find that this explanation excuses Chang's noncompliance. See Young v. Gordon, 330 F.3d 76, 82 (1st Cir. 2003)("[T]he mere fact that a litigant or a lawyer may have had other priorities does not constitute a bulletproof excuse for noncompliance with a court order.").

[13] At the December 6, 2004, Rule 16 Conference, the court discussed with the parties when discovery should close. At the conclusion of that discussion the court stated:

> All right. Discovery in this case shall close as of August 19, 2005. [Pause] Mr. Chang, for benefit of both sides, but particularly for you since you're representing yourself, the Pretrial Order which I am entering this date on, you'll get a

contentious August 15 e-mail that August 19th was a court-ordered deadline. See Desai Decl. ¶ 13.

With regard to the effectiveness of other sanctions, the court finds that an award of attorneys' fees and costs to Hasbro would not fully address the prejudice caused by Chang's abusive discovery tactics. By withholding and/or failing to produce documents relevant to Hasbro's claims and its defense against Chang's counterclaims prior to the close of discovery, Chang has frustrated to a significant degree Hasbro's ability to prepare for and conduct the trial of this action. See Gen. Dynamics Corp. v. Selb Mfg. Co., 481 F.2d 1204, 1213 (8th Cir. 1973) (affirming dismissal where defendant "attempt[ed] to effectively deprive [plaintiff] of an opportunity to litigate its civil claim by his conscious disregard of the duty imposed upon a litigant to respond in discovery wherever practicable"). An award of attorneys' fees and costs will not cure this prejudice. Even if Chang pays these fees and costs, Hasbro will still not have the information it needs for trial. Moreover, Chang may view such an award simply as a cost of doing business (and of his foot-dragging approach to litigation) which he can absorb if the end result is that he can continue to sell Ghettopoly and reap the profits therefrom.

Striking Chang's counterclaim would provide only partial relief to Hasbro. While such action would eliminate the possibility of an order canceling all of the trademark registrations owned by Hasbro for the term "MONOPOLY®" for board games, it would not appreciably assist Hasbro in proving its claims and damages.

---

> copy of that either today or within a few days, and it will spell out the requirements that Judge Torres has for the trial of this case and for matters leading up to trial.

Tape of 12/6/04 Conference.

Least satisfactory of all would be some form of an order requiring Chang to comply now with his discovery obligations on pain of monetary or other contempt sanctions. Discovery in this matter closed more than five months ago, and the case is likely to be reached for trial in the near future. Furnishment of the information now would require that Hasbro choose between either delaying the trial in order to fully utilize the materials provided (such as by redeposing Chang or others) or going forward without the benefit of full pretrial preparation as to the information contained in the documents provided at the eleventh hour. While Chang's history of dilatoriness suggests that he would welcome a delay in the trial, delay is not in Hasbro's interest because of the alleged harm to its reputation resulting from the continued sales of Ghettopoly. See Complaint ¶¶ 16-17, 21-23; see also Tape of 12/6/04 Rule 16 Conference; Tape of 10/7/05 hearing. In addition, Chang has plainly demonstrated that he does not obey court orders. He has ignored the requirements of both the May 5, 2005, Order and also of the Pretrial Order which required him to file a pretrial memorandum. There is no reason to believe that he would obey any additional order issued by this court.

Indeed, Chang has demonstrated a cavalier attitude towards other courts as well. He testified at his deposition that a Canadian court awarded Hasbro a default judgment against him and that he was ordered to pay "1,000 something" to Hasbro. Dep. at 237. However, he did not plan to pay the judgment and indicated that he intended to ignore it. Dep. at 238.

In sum, I find that no other sanction except default judgment will be effective in addressing Chang's egregious violation of his discovery obligations. His conduct demonstrates a disregard for the judicial process and the orderly administration of justice. See KPS & Assocs., Inc. v. Designs by

FMC, Inc., 318 F.3d at 15 ("courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice"); Guex v. Allmerica Fin. Life Ins. & Annuity Co., 146 F.3d 40, 42 (1st Cir. 1998)(affirming dismissal of plaintiff's complaint where he had, among other things, "demonstrated a troubling lack of respect for the judicial process").

As for the meritoriousness of Chang's defense and counterclaim, because he failed to file the Pretrial Memorandum any claims, defenses, and/or arguments he may have had are deemed waived. See Pretrial Order (Doc. #29) at 9. Therefore, this factor also weighs heavily in favor of default judgment. Thus, all six factors support the imposition of default judgment as the appropriate sanction for Chang's violation of the May 5, 2005, Order.

In addition, Chang's conduct also "undermines the court's efforts to manage its docket efficiently and effectively." Young v. Gordon, 330 F.3d at 83 (citing Tower Ventures, Inc. v. City of Westfield, 296 F.3d at 46 (explaining the centrality of scheduling orders in the case-management process and noting that "a party's disregard of such orders robs them of their utility")); see also Rosario-Diaz v. Gonzalez, 140 F.3d 312, 315 (1st Cir. 1998)("[L]itigants have an unflagging duty to comply with clearly communicated case-management orders, and this duty extends even to litigants who proceed pro se."). Because of the danger that others may be tempted to adopt Chang's apparent litigation tactic of delay and belated production only under extreme compulsion, the appropriate sanction in this case must do more than calibrate the scales between Hasbro and Chang. See Young v. Gordon, 330 F.3d at 83 (noting that a principal purpose of sanctions is to deter others from similar misconduct and that

"[w]hen a party flouts a time-specific order, that purpose is frustrated unless the court sends a strong signal"). Here deterrence of similar misconduct also favors default judgment as the appropriate sanction.

Lastly, the fact that Chang has now also violated the Pretrial Order by failing to file a pretrial memorandum shows a continuing disregard for the orders of this court. It is the proverbial straw that breaks the camel's back. Cf. Marx v. Kelly, Hart & Hallman, P.C., 929 F.2d at 11 (noting that plaintiff's advisement, for the first time, on the final day for production of documents that he was withholding on grounds of privilege over five hundred documents was regarded by the district court "as the final straw in what had become a series of delaying tactics").

**Summary**

In summary, the totality of events supports the imposition of default judgment and dismissal of Chang's counterclaims as the appropriate sanction for his noncompliance with discovery. See Young v. Gordon, 330 F.3d at 81. He has had the benefit of repeated extensions by Hasbro and written warnings from the court as to the possible consequences of noncompliance. See May 5, 2005, Order at 1-2; Pretrial Order (Doc. #29) at 8, 9. His conduct evidences a deliberate pattern of delay and disregard of court procedures. See Marx v. Kelly, Hart & Hallman, P.C., 929 F.2d at 10-11. Lesser sanctions are inadequate to remedy the harm resulting from his disregard of the judicial process.

**Conclusion**

For the reasons stated above and in accordance with the procedure prescribed by Chief Judge Torres' Order of 9/19/05 (Doc. #43), I recommend that default judgment be entered against Chang as to Hasbro's claims and that Chang's counterclaims be dismissed. As default judgment and dismissal are severe

sanctions, I do not recommend that Chang be ordered to pay Hasbro's costs and attorneys' fees incurred in the filing and prosecution of the Motion. However, if the recommendation for entry of default judgment against Chang and dismissal of his counterclaims is not accepted, then I recommend that such costs and fees be awarded.

Any objections to this Report and Recommendation must be specific and must be filed with the Clerk within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); D.R.I. Local R. 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
January 31, 2006

Accepted in the absence of an objection.
Ernest C. Torres
Ernest C. Torres
Chief, US District Judge
Date: 2/17/06